# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 09-00139-CR-W-DGK |
| ) | |
| v. ) | |
| ) | |
| ROBERT E. GREEN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER AND VERDICT

On April 23, 2009, the Defendant Robert E. Green was indicted with one count of bank robbery "by force, violence and intimidation" in violation of 18 U.S.C. § 2113(a). Doc. 10. The indictment alleged that the Defendant robbed a Commerce Bank location in the Brookside neighborhood of Kansas City on March 28, 2009. Defendant invoked his Sixth Amendment right to proceed pro se. Doc. 71, *Faretta v. California,* 422 U.S. 806, 819-820 (1975). Defendant then waived his right to a jury trial pursuant to Federal Rule of Criminal Procedure 23(a). Doc. 89. This case proceeded to a bench trial commencing on January 10, 2011. The Court has thoroughly reviewed the testimony and exhibits. Pursuant to Rule 23(c), the Court now issues the following written verdict, after announcing it on the record.

As to the Defendant Robert E. Green, **GUILTY** of Count One.

### Discussion

The Government bears the burden to prove each element of a count beyond a reasonable doubt. *United States v. O'Brien,* 130 S. Ct. 2169, 2174 (2009). Failure to prove any element beyond a reasonable doubt requires the Court to acquit. The crime of bank robbery under section 2113(a) has three essential elements: (1) the defendant took or attempted to take from the person

or presence of another, any property, money or other thing of value from in the care, custody, control, management or possession of any bank or credit union, (2) the defendant did so by force and violence or by intimidation, and (3) the deposits of the institution were insured by the FDIC at the time. 8th Cir. Crim. Jury Instr. § 6.18.2113A (2009).

In support of its case, the Government admitted 27 exhibits and called 15 witnesses. Defendant admitted five exhibits and called no witnesses. The Court found the testimony of all witnesses to be credible. The Court has considered all the evidence and testimony, and its findings are summarized below. The failure to mention a particular piece of evidence or testimony should not be construed as a comment on its probative value, as the Court reached its verdict based on the entire record.

**A. Taking Element**

The indictment alleges that the Defendant took $1,780 of Commerce Bank's money from the presence of Ms. Anna Rodriguez, a teller. Based upon the testimony of Ms. Rodriguez, and Government's Exhibits 1 and 2—the video footage and still photo the incident, respectively—there is no question that someone took money from Ms. Rodriguez on the morning of March 28, 2009. This makes the identity of that person the primary issue. Ms. Rodriguez did not identify the Defendant as the robber at the time. But she also testified that she was not focused on his face, due to the stress of the situation. Ms. Rodriguez did state the Defendant's shoes and pants were quite similar to those worn by the robber. Despite Ms. Rodriguez's inability to identify the Defendant by his face, upon review of Government's Exhibits 1 and 2, the Court notes a very striking similarity between the man featured therein and the Defendant. Numerous other factors convince the Court that the Defendant is the individual who took money from Ms. Rodriguez and therefore that the Government has proved the first element beyond a reasonable doubt.

First, the Defendant was taken into custody near the bank with $1,780.14 on his person. The Court finds this from the testimony of the arresting officer, Officer Kevin Growney of the Kansas City Police Department. The Commerce Bank audit performed immediately after the incident by Mr. Alex Clement indicates that $1,780.00 was unaccounted for from Ms. Rodriguez's teller station. Defendant offered an exhibit suggesting that the actual amount taken from him was $1,280.14. Def. Ex. 502. However, upon review of this property sheet filled out by Detective Tammy Payne, it is clear that this is simply an error. The subtotals add up to $1,780.14, not $1,280.14. Detective Payne testified that this was a math error that did not reflect the actual amount of money recovered. Last but not least, the Court counted the bills at issue and found $1,780. Gov. Exs. 20-22.

Ms. Patricia Rotert testified that she saw the individual featured in Government's Exhibit 2 climb over her fence and run west through her back yard on the morning of March 28. He claimed that he had just been robbed but that he did not want her to call the police. Ms. Rotert's house is at 6405 Baltimore Street, a little over a block east of the Brookside Commerce Bank. Gov. Ex. 32. Shortly after this, the Defendant was apprehended at 65th and Wyandotte, which is southwest of Ms Rotert's house. Ms. Rotert identified the man in her back yard as the same man in the still photo of the robber, and that he was wearing glasses, a dark jacket with a hood and baseball hat. When Officer Growney first observed the Defendant near 65th and Wyandotte, he was not wearing a hat, glasses, or jacket. Officer Eric Drunert recovered a black Ecko hooded sweatshirt, a black nylon rain jacket and a black KC baseball hat with insulated ear flaps from a trash can near 6405 Wyandotte—approximately two houses directly west of Ms. Rotert's house.

The black nylon rain jacket and the distinctive KC baseball hat with flaps recovered by Officer Drunert appear identical to items worn by the robber. The robber appears to be wearing

3

a black hooded sweatshirt under the rain jacket, but the body of the sweatshirt is not visible. The Defendant had similar glasses in his possession when booked into jail. Gov. Ex. 6. DNA analysis performed by Jessica Hanna on the hat and a buccal swab taken from the Defendant confirms that his DNA is on the hat. Gov. Ex. 23. He is also a possible minor contributor to DNA found on the Ecko sweatshirt. Gov. Ex. 25. Finally, the Defendant made inculpatory statements to FBI Special Agent Leena Ramana indicting that he had already incriminated himself in response to her questions about the bank robbery.[1]

To summarize, an individual was seen shortly after the robbery heading in the direction of 6405 Wyandotte wearing a baseball cap, glasses, black rain jacket and a hood. The hat and jackets were recovered from a trash can near 6405 Wyandotte, and the Defendant was apprehended walking south near 65th and Wyandotte with no hat or jackets, but $1,780. The rain jacket and hat are identical to those worn by the robber and DNA evidence conclusively links the Defendant to the hat, making him the person Ms. Rotert saw. While the Ecko sweatshirt cannot be clearly identified as being worn by the robber in the video footage, the presence of the Defendant's genetic profile as a possible contributor to DNA found on it bolsters the theory that he was at the 6405 Wyandotte trash can on the day in question. The evidence shows that after the robbery, the Defendant headed east briefly, and then west through Ms. Rotert's back yard to 6405 Wyandotte where he shed potentially identifying pieces of clothing and put them in a trash can. He then walked south on Wyandotte and was stopped by Officer Growney. Ms. Rotert's and Officer Growney's testimony and the DNA found on the clothing at 6405 Wyandotte confirm this timeline. Coupled with Defendant's inculpatory statements, his strong resemblance to the robber as seen in the video footage, and his possession of the amount

---

[1] Agent Ramana testified that the Defendant said "you know I just confessed to you but for legal reasons, that's all I can say" in response to a question about the Commerce Bank robbery.

4

missing from Commerce Bank, this shows beyond a reasonable doubt that the Defendant is the person who took money belonging to Commerce Bank from Ms. Rodriguez on the day in question. Accordingly, the Court finds the first element of Count One proved beyond a reasonable doubt.

   B. **Intimidation Element**

The second element requires that the Government prove beyond a reasonable doubt that the Defendant took the money by "force and violence, or by intimidation." 18 U.S.C. § 2113(a). The evidence does not support a finding that the Defendant used physical force, violence, or an explicit threat of violence during this incident. The Eighth Circuit has held, in accord with other courts, that the intimidation element of section 2113(a) is satisfied "if an ordinary person in [the teller's] position reasonably could infer a threat of bodily harm from the [the Defendant's] acts, *whether or not* [the Defendant] actually intended the intimidation." *United States v. Yockel,* 320 F.3d 818, 824 (8th Cir. 2003) (emphasis in original). Intimidation is measured by an objective standard, so just as it is not necessary for the Government to prove specific intent to intimidate, it is not dispositive that Ms. Rodriguez felt afraid for her life during the incident. *See United States v. Pickar,* 616 F.3d 821, 825 (8th Cir. 2010) (holding that evidence that a person was actually intimidated is probative but not conclusive). The Defendant handed Ms. Rodriguez a note demanding all $100, $50 and $20 dollar bills. Ms. Rodriguez testified that she realized that the Defendant was demanding money rather than making a legitimate withdrawal when she saw the "dead serious" look on his face. During the incident, she "was afraid maybe he had a gun or what else was in his pocket" Upon review of the video of the robbery, the Defendant kept his right hand partially in his jacket pocket during much of the robbery, suggesting that he might have been concealing a weapon. Gov. Ex. 1. This, coupled with his serious demeanor, use of a

demand note, and the fact that his face was partially disguised by glasses with stickers on them convinces that Court that an ordinary person could reasonably infer a threat from his actions. That Ms. Rodriguez was "scared for [her] life" confirms the reasonableness of such an inference. The Court finds the second element of Count One proved beyond a reasonable doubt.

### C. Insured Status Element

The final element requires that the Government prove that on March 28, 2009, the deposits of the Brookside branch of Commerce Bank were insured by the FDIC. To prove this, the Government offered the testimony of Mr. Jeremy Roe, a security supervisor employed by Commerce Bank. Mr. Roe testified that on the day in question, FDIC insurance for all Commerce Bank locations—including the Brookside Branch—was in effect. The Government admitted Exhibit 3, Commerce Bank's FDIC certificate. Defendant did not contest this evidence and whether Commerce Bank is insured by the FDIC does not appear to be a matter of legitimate controversy. In the alternative, the Court can take judicial notice of Commerce Bank's insured status by review of www.fdic.gov, which shows an FDIC certificate number for Commerce Bank—with a location at 6336 Brookside Plaza—matching Government's Exhibit 3. F.R.E. 201(b)(2), (c). The Court finds the third and final element of Count One proved beyond a reasonable doubt.

### Conclusion

The Court finds all three elements of Count One proved beyond a reasonable doubt. Accordingly, the Court finds the Defendant **GUILTY** of Count One. The Office of Probation and Pretrial Services shall conduct a presentence investigation after which the Court will set a sentencing date.

**IT IS SO ORDERED**

Dated: January 12, 2011                                  /s/ Greg Kays
                                                         GREG KAYS,
                                                         UNITED STATES DISTRICT JUDGE